UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| COOLER INK SOLUTIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:14-cv-1706 |
| v. ) | |
| ) | Judge Sharp |
| BLUE OCEAN HOLDINGS, INC., ) | Magistrate John S. Bryant |
| MICHAEL JOHN DAVIS, AND ) | |
| SHONA W. DAVIS, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Pending before the Court is Plaintiff's unopposed motion for summary judgment. (Docket No. 45.) Plaintiff's complaint alleges that Defendant Blue Ocean Holdings, Inc. ("Blue Ocean"), Michael Davis, and Shana Davis breached the parties' franchise agreement. As a result of the breach, Plaintiff seeks $150,741.61 in damages and a permanent injunction against Defendants.

**I. Breach of Contract**

Plaintiff argues that Defendants breached the franchise agreement by failing to pay royalties, marketing contributions, and operating expenses.

The Court agrees. To impose liability for a breach of contract under Tennessee law, a plaintiff must show that (1) an enforceable contract existed; (2) the defendant failed to perform under the contract; and (3) the defendant's failure to perform resulted in damages. Atria v. Vanderbilt Univ., 142 Fed. App'x 246, 254 (6th Cir. 2005). Defendants entered a contract with Plaintiff in September 2010. Under the contract, Defendants were obligated to pay royalties and marketing fund contributions. The contract also provided that, upon terminating the franchise,

1

Defendants would shut down the business, return all proprietary material to Plaintiff, and pay Plaintiff any fees due.

Defendants clearly breached the contract. They first defaulted on their contractual obligations when they failed to pay the marketing fund contributions and operating fees on November 30, 2013. After Defendants failed to cure the default, Plaintiff terminated the franchise. But Defendants refused to pay the required fees and continued to operate a business using Plaintiff's proprietary materials. The breaches caused Plaintiff $6,894.61 in damages. They also triggered the contract's liquidated damages provision, which requires Defendants to pay $143,847.00.

**II. Permanent Injunction**

Plaintiff also argues that it is entitled to a permanent injunction barring Defendants from operating a franchise or a competing business.

The Court agrees. A plaintiff seeking an injunction must demonstrate that (1) the plaintiff has succeeded on the merits of the case; (2) the plaintiff will suffer irreparable harm absent an injunction; (3) the balance of hardships to the respective parties favors an injunction; and (4) an injunction would not offend the public interest. See, e.g., Amoco Prod. Co. v. Vill. of Campbell, Alaska, 480 U.S. 531, 546 n.12 (1987) (noting that the standard for a permanent injunction is the same as the standard for a preliminary injunction, but the plaintiff must show actual success on the merits instead of a likelihood of success). In patent and copyright cases, a showing of past infringement and a substantial likelihood of future infringement justifies a permanent injunction. Bridgeport Music, Inc. v. Justin Combs Pub., 507 F.3d 470, 492 (6th Cir. 2007); Walt Disney Co. v. Powell, 897 F.2d 565, 567 (D.C. Cir. 1990) ("When a copyright plaintiff has established a threat of continuing infringement, he is *entitled* to an injunction.").

Plaintiff has satisfied each element. First, Plaintiff has succeeded on the merits of the case. The franchise agreement required that, after termination, Defendants would stop operating a franchise, de-identify their business, and completely disassociate with Cartridge World. But after the agreement was terminated, Defendants simply continued to operate a franchise. In doing so, they breached the franchise agreement.

Second, Plaintiff has shown that it will suffer irreparable harm absent an injunction. In trademark infringement cases, a likelihood of customer confusion strongly suggests irreparable harm to a party. See Ford Motor Co. v. Lloyd Design Corp., 22 Fed. App'x 464, 466 (6th Cir. 2001). Here, a customer could easily confuse Defendants' goods and services for those of Cartridge World. And this confusion would lead to immeasurable damages: without some means of identifying how often a customer will mistakenly purchase Defendants' goods, there is no way to calculate the resulting loss to Plaintiff. Additionally, Plaintiff points out that Defendants' actions have damaged Plaintiff's goodwill and reputation, which by itself is enough to show irreparable harm. See Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc., 453 F.3d 377, 382 (6th Cir. 2006) (finding that loss of customer goodwill and reputation constituted irreparable harm).

Third, Plaintiff has shown that the balance of hardships weighs in favor of granting the injunction. Because of customer confusion, loss of goodwill, and reputational damage, Plaintiff will surely lose revenue because of Defendants' breach. Yet Defendants "face[] no hardship in refraining from willful trademark infringement." Audi, AG v. D'Amato, 469 F.3d 534, 550 (6th Cir. 2006).

Fourth, Plaintiff has shown that it is in the public interest to grant an injunction. An injunction will reduce customer confusion between Defendants and Plaintiff, helping consumers

avoid Defendants' imitation products.  Moreover, an injunction will promote the sanctity of contracts by insuring that parties honor their contractual obligations.  See Certified Restoration Dry Cleaning, L.L.C. v. Tenke Corp., 511 U.S. 535, 551 (6th Cir. 2007) ("Enforcement of contractual duties is in the public interest.").

For the reasons explained above, Plaintiff's motion for summary judgment is GRANTED.

The Clerk of the Court shall prepare and enter a final judgment in accordance with Rule 58 of the Federal Rules of Civil Procedure.

It is so ORDERED.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE